```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
NAVISION SHIPPING COMPANY A/S,

              Plaintiff,              Opinion and Order

   - against -                        08 Civ. 10051 (LLS)

DOOYANG LIMITED, DOOYANG LINE and
DNY OCEAN CO.,

              Defendants.
- - - - - - - - - - - - - - - - - -X
```

Defendants move to dismiss plaintiff's verified complaint and vacate the November 19, 2008 ex parte order for process of maritime attachment and garnishment of up to $12,324,520 in their property, and, if those requests are denied, to reduce the amount of property subject to attachment, and give them countersecurity.

The issues raised by the motion are disposed of as follows.

1. Motion to Dismiss and Vacate

Defendants argue that dismissal of the verified complaint and vacatur of the attachment order are required because plaintiff has failed to show that it has a valid prima facie admiralty claim against any of them.

A.

Plaintiff time chartered the motor vessel "LISA J" to defendant Dooyang Limited, whose obligations were guaranteed by defendant Dooyang Line. Plaintiff is now pressing its claim for breach of the charter party against the Dooyang defendants in arbitration proceedings under English law in London as required by the contract.

- 1 -

The verified complaint alleges that:

- Dooyang Limited failed to remit the hire payment for the period from about November 8 through 17, 2008 (see Verified Compl. ¶¶ 10-12);

- plaintiff exercised its option to withdraw the vessel on November 17, after Dooyang Limited was on November 13, 2008 notified of, and failed to cure, the default (see id. ¶¶ 11-14); and

- plaintiff is owed the past-due hire payment and damages for the loss of hire payments it expected to receive from the contract's termination on about November 17, 2008 through July 1, 2009, the earliest date for re-delivery of the vessel under the contract (see id. ¶¶ 10, 15-17).

The "option" to withdraw the vessel is allegedly conferred by clauses 5 and 47 of the charter party, which provide that failing the punctual and regular payment of the hire, plaintiff may withdraw the vessel without prejudice to any claim it may otherwise have against the charterers, if they fail to cure.

Defendants contend that a default on one hire installment is not "tantamount to full repudiation and breach of the charter party" (Defs.' Mem. 4), and that the vessel's withdrawal was accepted only "in contemplation of the resolution of the dispute regarding the singular outstanding hire period" (id. 4-5, emphasis in original).  Those are questions for the London arbitrators to decide.  See, e.g., Glory Wealth Shipping Service Ltd. v. Five Ocean Corp. Ltd., 571 F. Supp. 2d 531, 535 (S.D.N.Y. 2008)("Because the Time Charter is subject to arbitration in London and governed by English law, whether Clause 31 prohibited the Iraq Voyage and whether Five Ocean repudiated the Time Charter are questions of contract law that are for the London arbitrators to decide, not for this Court.").

The allegations suffice to state a claim for breach of the charter party against Dooyang Limited as charterer and Dooyang Line as guarantor, and justify the attachment order as against them.

B.

Defendants argue that the attachment against defendant DNY Ocean Co. must be vacated because there is no showing that DNY is the alter ego of Dooyang Limited or Dooyang Line.

The allegations that DNY "is a receiving/paying agent of Dooyang and/or Dooyang Line" and that defendants are "partners and/or joint venturers" or "affiliated companies", which are merely legal conclusions, cannot sustain the attachment against DNY.

The only factual basis for plaintiff's alter ego theory is a bank remittance slip which shows that DNY paid the 18th hire installment of $66,206.94 on Dooyang Limited's behalf (when DNY had no obligation to do so under the charter party), and that the Dooyang defendants and DNY share common offices.

Dooyang Limited's Planning and Legal Team Manager, Mr. Im Chungbin, declares under penalty of perjury (his Feb. 2009 Decl. ¶¶ 12, 14-19) that Dooyang Limited is a completely separate and distinct entity from DNY; that DNY is not a subsidiary of Dooyang Limited; that Dooyang Limited has completely separate directors, officers, office staff, employees and profit centers from DNY; that Dooyang Limited completes and files taxes separately from DNY; that Dooyang Limited does not hold or use as its own any property or assets of DNY; and that Dooyang Limited has strictly arms-length dealings with DNY and observes formal legal requirements regarding corporate activities.

Corporate entities are presumed to be distinct. The veil separating them may be pierced only if "(1) a corporation uses

its alter ego to perpetrate a fraud *or* (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." Status Intern. S.A. v. M & D Maritime Ltd., 994 F. Supp. 182, 186 (S.D.N.Y. 1998)(italics in original), principally citing Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 342 (2d Cir. 1986) and Kirno Hill Corp. v. Holt, 618 F.2d 982, 984-85 (2d Cir. 1980).

Plaintiff's showing does not justify attaching DNY's property, to secure a claim for breach of a contract to which DNY is not a party. Cf. Williamson v. Recovery Ltd. Partnership, No. 06 Civ. 5724 (LTS), 2007 WL 102089, at *3-4 (S.D.N.Y. Jan. 16, 2007), aff'd, 542 F.3d 43, 53 (2d Cir. 2008); Kola Shipping Ltd. v. Shakti Bhog Foods Ltd., No. 08 Civ. 8817 (GEL), 2009 WL 464202, at *2 (S.D.N.Y. Feb. 24, 2009).

Vacatur of the attachment order as against DNY is granted, and the attached funds belonging to DNY are released.

C.

The Dooyang defendants argue that the attachment order was void ab initio because plaintiff's application for it failed to establish that they had property in this district at the time it was sought. They rely principally on Judge Sullivan's orders in Wight Shipping, Ltd. v. Societe Anonyme Marocaine De L'Industrie Du Raffinage S.A., No. 08 Civ. 10169 (RJS), 2008 U.S. Dist. LEXIS 106420, at *5-8 (S.D.N.Y. Nov. 24, 2008)(maritime attachment application denied without prejudice: "more is required to demonstrate a 'plausible' entitlement to a maritime attachment than a conclusory allegation that Defendant 'is believed to have or will have property' in this District located at any of twenty-three or more garnishees during the pendency of

the requested order") and Chung Lin Marine Service Corp. v. China Chance Shipping Ltd., No. 08 Civ. 10741 (RJS), 2008 U.S. Dist. LEXIS 106417, at *6-7 (S.D.N.Y. Dec. 12, 2008)(same).

Because plaintiff has already restrained Dooyang funds in this district (see Pl.'s Opp. 7-8), those orders are inapplicable.  See Hanjin Overseas Bulk Ltd. v. CPM Corp. Ltd., No. 08 Civ. 9516 (BSJ), 2008 WL 5429640, at *2 (S.D.N.Y. Dec. 22, 2008)("The Court, however, finds *Wight Shipping* and *Chung Lin Marine Service* to be inapplicable at this stage of the litigation—that is, the stage at which assets in this District have already been restrained.  Thus, vacatur on this ground is not appropriate.").

### 2.  Motion to Reduce Attachment

The parties agree the attachment order should be reduced from $12,324,520, though they disagree over the proper amount of the reduction.

Plaintiff agrees that the amount subject to attachment should be reduced to $7,098,321.72, the amount which it now expects to recover.

Defendants seek a further reduction, based on hearsay in newspaper reports from which defendants calculate that plaintiff was able to mitigate its loss of charter payments from Dooyang Limited by making alternate arrangements which reduced its daily shortfall from $20,000 to $5,000.  Newspaper accounts based on undisclosed market sources are too unreliable to furnish a basis for a ceiling on the security for plaintiff's claim.

"It is well-settled that in an attachment proceeding, the plaintiff need not prove its damages with exactitude."  Dongbu Exp. Co., Ltd. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996).  Plaintiff has a sufficient basis for its revised

recovery estimate, and the maximum amount which may be attached pursuant to the attachment order is reduced to $7,098,321.72.

### 3.  Motion for Countersecurity

The Dooyang defendants seek countersecurity equal to the amount of Dooyang funds that plaintiff is presently holding ($2,652,289.24), to secure their counterclaim for damages caused by plaintiff's allegedly wrongful withdrawal of the chartered vessel.

Defendants claim that the withdrawal was improper because Dooyang Limited "had paid the previous eighteen hire statements due and owing under the charter party" (Defs.' Mem. 4), "did not convey any intention to repudiate the charter party" (id.), in no way failed to perform under its terms (id.), and accepted the withdrawal only "in contemplation of the resolution of the dispute regarding the singular outstanding hire period" (id. 4-5, emphasis in original);  and they allege that because of the premature withdrawal of the vessel, which Dooyang Limited had sub-chartered to a third party, Dooyang Limited will sustain a total loss of $6,583,041.83.

Plaintiffs argue that the counterclaim is too speculative and insufficiently supported to require the posting of countersecurity because there is no evidence that the withdrawal was wrongful, and because the sub-charterer defaulted on its payments and was about to go bankrupt.

The "purpose of Rule E(7) [of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure] is to place the parties on an equality as regards security, which usually favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction", Result

Shipping Co., Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399-400 (2d Cir. 1995)(citations and quotation marks omitted). The "overwhelming weight of authority among courts in this Circuit, and in other circuits, favors the view that, with regard to the merits of the movant's counterclaim, the court should do no more than screen out 'totally frivolous claims' by the counterclaimant upon review of a motion under Rule E(7)." Front Carriers LTD. v. Transfield ER Cape Ltd., No. 07 Civ. 6333 (RJS), 2007 WL 4115992, at *2 (S.D.N.Y. Nov. 19, 2007)(quoting and citing cases); accord Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte Ltd., 531 F. Supp. 2d 586, 589 (S.D.N.Y. 2008)("screen only for 'totally frivolous claims'"); Eastwind Maritime, S.A. v. Tonnevold Reefer 7 KS, No. 08 Civ. 3292 (HB), 2008 WL 4831324, at *3 (S.D.N.Y. Nov. 10, 2008)("determine that it is 'non-frivolous'"); Rice Co. v. Express Sea Transport Corp., No. 07 Civ. 7077 (WHP), 2007 WL 4142774, at *4 (S.D.N.Y. Nov. 15, 2007)(same).

One cannot conclude on this preliminary and sparse record that the counterclaim is frivolous, and plaintiff has neither asserted nor shown that posting the requested countersecurity would impose burdensome costs which might prevent it from prosecuting its underlying claim.  Therefore, plaintiff shall post countersecurity equal to the $2,652,289.24 it has attached, within ten business days hereof.

## CONCLUSION

For the reasons set forth above, the issues raised by defendants' motion (Docket Nos. 8-9) are disposed of as follows:

(1) Dismissal of the verified complaint, and vacatur of the attachment order as against the Dooyang defendants, are denied;

(2) The attachment order as against defendant DNY is vacated, without prejudice to a further showing of facts which would make an attachment of DNY's property appropriate; and the attached funds belonging to DNY are released;

(3) The maximum amount which may be attached under the attachment order is reduced to $7,098,321.72; and

(4) Plaintiff shall post countersecurity in the amount of $2,652,289.24 within ten business days from the date hereof.

So ordered.

Dated: New York, NY
       March 31, 2009

                                    *Louis L. Stanton*
                                    ──────────────────
                                    Louis L. Stanton
                                    U.S.D.J.